## ABERCROMBIE, et al., v. CONNER.

1. Where several judgments are rendered for the same debt, it seems that the satisfaction of one will operate to discharge the other, except as to the costs; and if one of the defendants in such judgments has a claim on the other, he must assert it by suit in his own name.

2. Where several persons indorse a bill for the accommodation of the drawer, or acceptor, they will be liable as between themselves in the order in which they indorsed; unless there was some agreement, express or implied, to be liable otherwise.

3. The vendor of land, with a covenant of warranty, has an interest which entitles him to move to set aside a sale thereof, subsequently made under a *fieri facias*, upon grounds which affect the validity of the execution; and this although the vendor may have been discharged as a bankrupt under the act of Congress of 1841, for perhaps such discharge could not be pleaded in bar of a breach to occur *in futuro*.

4. Where *real estate* has been sold under a *fi. fa.* a motion to set aside the same will be entertained any time before the purchaser obtains possession, or recovers it by suit; and even after the possession is obtained, where this takes place in so short a time after the sale that application cannot be conveniently made to set it aside.

Error to the Circuit Court of Talladega.

THE facts of this case, so far as necessary to the understanding of the opinion of the court, may be thus stated. A bill of exchange was drawn by E. C Walker, in favor of James Abercrombie, on Gideon Riddle, by whom it was accepted, and indorsed first by the payee, secondly by Zimri Madden, and thirdly by David Conner. Default having been made in the payment of the bill at maturity, it was protested for non-payment, and several actions brought against the acceptor and indorsers, by the holders, Messrs. Wm. Knox & Co. In these actions judgments were recovered, and the bill with interest and incidental charges, fully paid off by Abercrombie. Thereupon the plaintiffs in the judgments assigned their judgment against the acceptor to the plaintiffs in the motion, who caused an execution to be issued upon the judgment a-

gainst the third indorser, under which his lands were levied on and sold. At the execution sale, the plaintiffs became the purchasers, and received a deed as such from the sheriff; and the defendant in execution moved the court to set aside the sale, and that the deed be declared inoperative. This motion was granted, and an order made accordingly.

The motion was opposed upon the ground that the bill was indorsed by those whose names appear thereon, for the accommodation of the primary parties to the bill, that the defendant had admitted his liability to contribute, and that the plaintiff, by the payment of the bill, with all charges thereon, became entitled to all securities which the holders possessed; and could enfore contribution by execution on the judgment in their favor against Conner. Further, that Conner could not make such a motion, because he had sold the land to one Bradford.

S. F. Rice and T. D. Clark, with whom was E. W. Peck, for the plaintiff in error, cited Daniel v. Smith & Sorrells, at the last term; 4 Ala. Rep. 572, 696; 10 Johns. Rep. 524; 9 Porter's Rep. 679; 5 Ala. Rep. 683; 3 Stew. Rep. 247; 4 Johns. Ch. Rep. 123; 7 Johns. Rep. 361; 2 Hawks Rep. 590; 1 Ohio Rep. 191; Freem. Ch. Rep. 116; 5 Johns. Ch. Rep. 320; 6 Ala. Rep. 696; 7 Id. 315, 539, 683, 779, 784, 923; 3 Id. 302; 3 Stew. & P. Rep. 346; 3 Cow. Rep. 42, note (a); 2 Ala Rep. 21; 7 Id. 202; 3 Stew. & P. R. 385; 7 Wend. Rep. 83; 1 Dunl. Prac. 332; 11 Johns. Rep. 556; 4 Ala. Rep. 402; 5 Id. 58, 90, 221; 8 Wend. Rep. 480; 3 Hill's Rep. 215; 2 Johns. Ch. Rep. 290; 3 Hals. Rep. 153; 2 Ala. Rep. 256; Clay's Dig. 502-3; 1 Munf. Rep. 373, 398.

W. P. Chilton, F. W. Bowdon, and A. White, for the defendant in error, insisted, that the motion of Conner was rightly made in due time; that the execution on the judgment against him was irregularly issued; and that the sale should be set aside.

COLLIER, C. J.—There is no proof in the record showing that Messrs Knox & Co. assigned their judgment against

Abercrombie, et al. v. Conner.

Conner to the plaintiff in error, or that the latter ever acquired an inserest therein, unless the payment of the bill by him would confer it. Conceding that the indorsers were, as it respected previous parties, to be secondarily liable, and as between themselves, were to be responsible as co-sureties, and still it cannot be maintained that they should enforce contribution against each other, by suing an execution upon a judgment recovered by the holder of the bill. A satisfaction of one of the several judgments for the same cause of action, would operate *ipso facto* to discharge the others, except as to the costs. [4 Ala. Rep. 572.]

Let it be admitted that the indorsers put their names upon the paper for the accommodation of the drawer, or acceptor, and still they must be liable as between themselves in the order in which they indorsed ; unless there was some agreement, express or implied, to be liable otherwise. Without stopping to inquire, whether there is any proof to show, that there was such a previous understanding, or whether Conner has made any subsequent promise to contribute, which is obligatory upon him, we would merely remark that in the predicament in which the cause is presented, if Conner is liable to contribution, he must be charged in an independent action, at the suit of Abercrombie.

We might here close this opinion, but other questions have been pressed with great earnestness, at the bar, which it is said not only arise in this cause, but are involved in others still pending in the primary courts.

Whether the costs had been paid on the judgment against Conner, is perhaps not an important inquiry in the posture in which the present case is presented. It is perfectly clear, that the plaintiffs in that judgment, or the officers of court, did not cause the execution to issue for the purpose of enforcing their collection. The inference is, that the plaintiffs in the judgment did not interfere in the matter, and that if the costs have not been paid, they could have been collected at any time, without the sale of land, which the proof recited in the record shows, had several times changed hands at prices ranging from six to eight thousand dollars. Abercrombie was the actor in directing the execution, and can-

not legalize the acts under it, merely because the costs were unpaid.

It is insisted by the plaintiff in error, that although the execution may have irregularly issued, and the sale may have been unauthorized, yet as Conner had previously disposed of all his interest in the land, he has not been prejudiced, and consequently cannot ask the interference of the court. It may be true as the record indicates, that Conner had sold the land between the time when the judgment was rendered and the issue of execution; but the same evidence also informs us that he conveyed with a *general warranty*, and of course is compelled to make good the title of his vendee. If however, the deed contained no warranty, would it not be allowable for his vendee, to move to set aside the sale, and carry on the proceedings in Conner's name, instead of his own? Be this as it may, it is clear that his liability upon the warranty if his vendee should be evicted, authorizes him to take legal measures to prevent such a result. Conner's discharge as a bankrupt could not perhaps be pleaded in bar to a breach of warranty subsequently accruing.

The plaintiffs in error insist further, that the judgment vacating the sale is erroneous, because it does not order the purchase money to be refunded as a precedent condition. In answer to this argument it may be said, that Abercrombie himself bid off the land for the sum of *fifty dollars*, which he did not pay to the sheriff, as he claimed the right to whatever might be collected on the execution. There was then nothing upon which the order to refund could have operated.

In respect to the objection, that the defendant in error has slumbered too long upon his rights, to be allowed to object to the validity of the sale, we are all of opinion that it cannot be supported. Upon the sale of lands under execution, a mere right of action passes to the vendee, but where personal property is sold, the possession itself is delivered. In the latter case, the application to set aside the sale, must be immediate, or at least as soon as reasonably may be, or the delay must be excused; but where lands are the subject, the motion may be made any time before the purchaser takes possession, or recovers it by suit; unless the possession is acquired in so short a time after the sale, that an application cannot be con-

veniently made.  Until the possession is disturbed, the parties in interest may have had no notice of the sale, or if they have, perhaps may infer that the purchaser will not attempt to claim under his purchase.   There is then no necessity for the party in possession to be active, until the purchaser obtains possession, or makes an effort to acquire it.   This reasoning my brethren think furnishes a satisfactory answer to the objection, that the defendant in execution has not moved with promptness in this business ; but there are other reasons which are quite as potent with me, and I will briefly state them.   The execution, it must be remembered, issued upon a judgment having no vitality, except as to the costs ; at least such is the inference from the case stated in the record. Bradford had purchased from Conner before the execution issued, and the reasonable inference is, that the possession of his vendee was open and notorious, and neither Abercrombie nor any one claiming under him, have been prejudiced by the delay in moving to set aside the sale under which he purchased.   The fact of a continuing adverse possession would be sufficient to inform Abercrombie, or his vendee, that there was not an acquiescence in his title.   Even if the proceedings under the judgment against Conner were not merely void as it respects Abercrombie, yet there being an *actual adverse possession* by Bradford, or some one claiming under him, would not a conveyance by Abercrombie, (though his purchase and the sheriff's deed may have invested him with the title,) under such circumstances, be a mere nullity, in an action by his vendee to recover the possession ?   If this be so, he could not have sold the land—how then could he be injured by the failure of Conner to move earlier in the matter? The case of Steele v. Worthington, 7 Ala. Rep. 266, which has been supposed to be an authority for the plaintiff in error, has been carefully examined, and we have been unable to discover the analogy.   See further, Mobile Cotton Press, &c. v. Moore & Magee, 9 Porter's Rep. 679 ; Hubbert and another v. McCollum, 6 Ala. Rep. 221.   We have patiently considered all the points arising upon this very voluminous record, and are entirely satisfied, that there is nothing to show a ratification of the sale under execution.   In fact we can-

38

not conceive how Conner, if he had desired, could have ratified it—having previously conveyed with warranty to Bradford, and in respect to the latter there is not the slightest ground to infer his assent.

The judgment of the circuit court upon the motion, must be affirmed.